[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON MOTION TO STRIKE
The plaintiff a former employee of the defendant, has brought a complaint in three counts. The first count alleges that the employer created an unsafe workplace in violation of § 31-49 of the General Statutes and thereby caused damages. The second count alleges negligent infliction of emotional distress, and the third count claims emotional distress and a wrongful discharge as a result of negligent supervision of a co-employee.
The plaintiff alleges that he was hired by the defendant's corporate predecessor in 1985 and was a good employee. For about a year, from May, 1997, through May, 1998, he was harassed and tormented by one Chandra Warren, a "Dietary Supervisor" who was a supervisor of the plaintiff. She taunted him profanely and attempted to humiliate him in front of other employees. The plaintiff reported his concerns to supervisors, who were not helpful. In fact, his complaints seemed to exacerbate the situation. He spoke with the administrator, and filed a grievance; at a meeting called apparently as a result of the filing of the grievance, he was told, essentially, that his complaints were not believed and that maybe he was the problem. He attempted to follow through by calling an 800 number provided by the corporate employer, but his efforts were for naught.[1]
He alleged that he developed severe emotional distress accompanied by physical symptoms and, when he received no assistance after trying to comply with the corporate grievance and complaint procedure, he resigned. He alleged that his resignation was the result of constructive termination.
The meeting following the grievance occurred on May 11, 1998. Because the meeting was not helpful, from the plaintiff's point of view, in resolving the difficulties, he requested and was granted medical leave of May 14, 1998. He continued to try to resolve the problems by phone, but, getting no response, he resigned on July 28, 1998.
The defendant Harborside has moved to strike all three counts. "The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." Faulkner v.United Technologies Corp. , 240 Conn. 576, 580 (1997). The role of the trial court in ruling on a motion to strike is "to examine CT Page 11059 the [complaint], construed in favor of the plaintiffs, to determine whether the [plaintiffs] have stated a legally sufficient cause of action." Dodd v. Middlesex Mutual AssuranceCompany, 242 Conn. 375, 378 (1997). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Faulkner, supra, at 580. "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix MedicalSystems. Inc. v. BOG Group. Inc., 224 Conn. 210, 215 (1992).
The defendant argues that the first count does not state a cause of action because § 31-49 of the General Statutes does not create an independent cause of action. I agree with the decisions of Karanda v. Pratt Whitney Aircraft, 1999 Conn. Super. LEXIS 1244, CV 98 582025 (J.D. of Hartford — New Britain, May 10, 1999) (Hale, JTR), and Swaney v. Pfizer, 5 Conn. Ops. 397, No. 541984 (J.D. of New London, March 15, 1999) (Mihalakos, J.). These decisions hold that § 31-49 does not create an independent cause of action, as it is expressly to be enforced by the Labor Commissioner, pursuant to § 31-50. Parsons v. United TechnologiesCorporation, 243 Conn. 66 (1997), did not hold that § 31-49
created an independent cause of action. Rather, it held that the section was relevant to establish a public policy promoting safe workplaces, such that an action for wrongful discharge, under the rather unusual facts of that case, could survive a motion to strike. Indeed, if § 31-49 were construed to establish an independent cause of action in tort for damages arising out of an unsafe workplace, there would be an inconsistency with the exclusive remedy of workers' compensation. The motion to strike the first count is granted.
The defendant has also moved to strike the second count, which alleges negligent infliction of emotional distress. The rubric is that "the plaintiff has the burden of pleading that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm . . . Negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process." Parsons v. United Technologies Corp. , supra, 88-89. Relying on the requirement that, to be actionable, any infliction of emotional distress must have arisen in the process of termination, the defendant argues that the complaint on its face cannot satisiy this element. CT Page 11060
The plaintiff relies primarily on the holding and reasoning of Karanda v. Pratt Whitney Aircraft, supra. Judge Hale rather persuasively reasoned that the reason for limiting the action of negligent infliction of emotional distress to the termination process is that injuries incurred in the termination process are not generally compensable in the workers' compensation system. If emotional distress is otherwise compensable, then a tort action is barred by the exclusive remedy rule. Because recovery for workers' compensation claims based purely on emotional distress was abrogated by the General Assembly in 1993[2], then recovery in tort for emotional distress cannot run afoul of the exclusive remedy rule.
Although there is logic to the argument, I cannot ignore the Supreme Court's consistent and unequivocal language and holdings limiting recovery for emotional distress in the employment context to distress inflicted in the termination process.[3]
Although the exclusive remedy rule may have been one reason for limiting the scope of the cause of action, it may not have been the only reason, and the black letter law has become an established part of our jurisprudence. Although an appellate court of course may appropriately modify or reverse explicit prior holdings, I do not think that it is ordinarily appropriate for a trial court to decide issues contrary to holdings of the Supreme Court unless it is absolutely clear what the Supreme Court would hold. I do not have that level of confidence in my clairvoyant abilities.
The plaintiff also appears to claim, in passing, that because a constructive termination is alleged, some portion of the allegedly tortious conduct took place during the termination process. As the pleadings are currently phrased, I cannot find that that conclusion can be reasonably inferred from the facts alleged. On the face of the complaint, the "termination process" took place in July, 1998, when the plaintiff resigned. The motion to strike the second count is granted.[4]
Finally, the defendant has moved to strike the third count, which claims that the defendant's negligent supervision of employees resulted in constructive discharge and damages. The defendant argues that in the absence of an allegation of a specific duty to the employee which was breached, there can be no recovery for negligent supervision. See, e.g., Daley v. AetnaLife Casualty Co., 1994 Conn. Super. LEXIS 1994, No. CV 94 CT Page 11061 533693 (J.D. of Hartford — New Britain, August 3, 1994) (Sheldon, J.) (prior to discharge of an employee at will, there is no duty to investigate). The plaintiff relies primarily[5] on Brunellev. Reuters Analytics, Inc., 21 Conn. L. Rptr. No. 11 (April 27, 1998) (Rittenband, J.) for the proposition that an employee may recover for emotional distress caused by an employer's negligent supervision of its employees. Brunelle, however, is premised in part on the proposition that an employee may recover for the negligent infliction of emotional distress other than in the termination process. I have read all of the authority submitted by both sides, as well as other cases, and I have reached a conclusions somewhat different from those of either side.
Assume, without deciding, that the complaint does state facts from which a constructive discharge may be inferred; that is, that the defendant deliberately — or through negligent supervision, according to our assumption — created job conditions so unbearable that a reasonable person would have felt compelled to resign. See, e.g., Seery v. Yale-New Haven Hospital,17 Conn. App. 532, 540 (1989). Such a constructive discharge, it would certainly seem, is actionable only where an express discharge would be actionable in the same circumstances. If age discrimination, for example, is the reason for the discharge, express or constructive, then a cause of action may be stated. See Loudee v. Strouse Adler Co., 1998 Conn. Super LEXIS 250, No. CV 97257057 (J.D. of New Haven at Meriden, January 29, 1998) (Dunnell, J.). Similarly, the discharge, express or constructive, of an at-will employee may be actionable if the discharge violates a clear public policy. See, e.g., Parsons, supra. But the mere allegation that a discharge is constructive does not by itself convert a nonactionable discharge of an at-will employee into a viable cause of action.
Assuming, then, that there is a constructive discharge alleged, what allegation makes it wrongful? There is no clear public policy barring discharge because of internal complaints about rude and inappropriate behavior — at least none has been alleged. We are left with a claim of emotional distress caused by negligent supervision. This is but a variation of the claim of negligent infliction emotional distress, which has already been stricken. And, as noted above, a claim of negligent infliction of emotional distress is actionable only in the context of termination, which has not been sufficiently alleged in this complaint.[6] The motion to strike the third count is granted. CT Page 11062
Beach, J.